# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SEAN WILLIAM QUIGLEY,

        Defendant-Appellant.

UNPUBLISHED
January 19, 2016

No. 322482
Wayne Circuit Court
LC No. 13-009245-FC

Before: SAAD, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of terrorism, MCL 750.543f, kidnapping, MCL 750.349(1)(b), making a terrorist threat or false report of terrorism, MCL 750.543m, and making a false report of a bomb threat, MCL 750.411a(2)(b). Defendant was sentenced to 10 to 15 years' imprisonment for the terrorism and kidnapping convictions, 10 to 20 years' imprisonment for the making a terrorist threat or false report of terrorism conviction, and two to four years' imprisonment for the making a false report of a bomb threat conviction. We affirm in part, reverse in part, and remand for resentencing and a determination of the appropriate restitution amount.

This case arises from defendant's misguided attempt to have law enforcement check on his friend, Sarah Mazue, because he feared for her safety. After being unable to reach Mazue by phone for a time, defendant became convinced that she had become a victim of human trafficking or forced prostitution. He sought assistance from the Westland Police Department, the Federal Bureau of Investigation, and the Department of Homeland Security, all to no avail. Defendant then went to the Westland City Hall and held the mayor's executive secretary, Shannon Ackron, as a hostage until she escaped several hours later. Defendant told Ackron and others that he had a bomb and would detonate it if his demands were not met. After defendant surrendered, police officers discovered that he had only a small flashlight and a cellular telephone charger, not a bomb.

## I. APPLICABILITY OF THE MICHIGAN ANTI-TERRORISM ACT

Defendant contends that the legislative history of the Michigan Anti-Terrorism Act ("the Act"), MCL 750.543a *et seq.*, reveals that the Legislature did not intend the Act to apply to a defendant unless he or she targeted a larger population with the intent to bring the government down, severely cripple government's ability to efficiently function, or keep the populace in a

state of fear or terror, and that defendant did not intend any of the foregoing. Defendant then focuses on the statutory language, and argues that he did not commit a "violent felony" and so could not be convicted of terrorism. We disagree with the former argument, but agree with the latter.

To preserve a challenge to a trial court's interpretation or application of a statute, a defendant must first raise the issue before the trial court. See *People v Kimble*, 470 Mich 305, 312, 684 NW2d 669 (2004). Defendant raises the issue of the Michigan Anti-Terrorism Act's application to his case for the first time on appeal. Thus, the issue is unpreserved for appellate review. See *id*.

We review unpreserved issues for plain error affecting substantial rights. *People v Bosca*, 310 Mich App 1, 41; 871 NW2d 307 (2015). To show plain error, a defendant must establish that "1) error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affects the defendant's substantial rights if it prejudiced the defendant by affecting the outcome of the trial. *Id*. Even if a defendant can satisfy all three requirements, appellate reversal is warranted only when the plain error resulted in the conviction of an actually innocent defendant or when the error seriously affected the "fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted).

Further, our review of a prosecutor's exercise of discretion in charging a defendant with a specific offense "is limited to whether an abuse of power occurred, i.e., whether the charging decision was made for reasons that are unconstitutional, illegal, or ultra vires." *People v Conat*, 238 Mich App 134, 149; 605 NW2d 49 (1999).

Resolution of defendant's argument requires analysis of the language contained in the Act. "The foremost rule of statutory construction is to discern and give effect to the intent of the Legislature." *People v Lyon*, 310 Mich App 515, 517; ___ NW2d ___ (2015). In doing so, we focus on the plain language of the statute and "must conclude that the Legislature intended the meaning clearly expressed[.]" *Id*. (citation and quotation marks omitted; alteration in original). Generally, we interpret statutory terms according to their ordinary meaning, but we "must accept and apply the definition of terms specifically provided in a statutory scheme." *Id*.

The Act was passed in the wake of the September 11, 2001 terrorist attacks on the United States and proscribes both actual terrorist activity and threats or false reports of the same. MCL 750.543f; MCL 750.543m. Among various other provisions, MCL 750.543b(a)(iii) defines an "act of terrorism" as one "that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion." Under the Act, "[a] person is guilty of terrorism when that person knowingly and with premeditation commits an act of terrorism." MCL 750.543f. MCL 750.543m, meanwhile, provides that a person may be convicted of making a terrorist threat or false report of terrorism regardless of his or her actual intent and capability to carry out the threat, so long as the person's actions satisfy the elements of the offense.

Regardless of the legislative history defendant provides in his brief on appeal, we determine legislative intent by focusing on the statute's plain language. See *Lyon*, 310 Mich App at 317. Although defendant contends that a necessity for prosecutorial restraint—that is, that prosecutors would only charge a defendant under the Act when the defendant possessed a certain, narrow intent—was implicit in and vital to the Legislature's passage of the Act, the plain language of the statute does not support such a conclusion. It is true that under the Act a person must have intended "to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion" to perform an act of terrorism under MCL 750.543b(a)(iii). And, to violate MCL 750.543m(1)(a), a person must simply threaten an act of terrorism and communicate that threat to another, and MCL 750.543m(2) provides that "[i]t is not a defense . . . that the defendant did not have the intent or capability of committing the act of terrorism." But the answer does not lie in these general principles, but through an application of the sections at issue, and whether those sections apply to defendant's circumstance. As shown below, they do in part.[1]

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that he was improperly convicted of terrorism and making a terrorist threat or false report of terrorism because kidnapping is not a "violent felony" under MCL 750.543b(h) and, thus, may not serve as a proper predicate felony for the offenses. The prosecution concedes error in conjunction with both offenses, but does not concur with defendant's requested relief. We agree that the prosecution presented insufficient evidence to sustain defendant's terrorism conviction, but disagree with defendant's assertion and the prosecutor's concession of error regarding defendant's conviction for making a terrorist threat or false report of terrorism.

We review de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). "[T]his Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008).

### A. MCL 750.543F

MCL 750.543f governs criminal terrorist actions and provides that "[a] person is guilty of terrorism when that person knowingly and with premeditation commits an act of terrorism." MCL 750.543b(a), in turn, defines an act of terrorism:

---

[1] The prosecutor did not abuse her power by charging defendant under the Act. See *Conat*, 238 Mich App at 149. Defendant does not argue that the prosecutor charged him for unconstitutional, illegal, or ultra vires reasons, but instead merely argues that defendant was not the sort of offender that the Legislature envisioned when it passed the Act. But, as just discussed, this argument is contrary to the act's plain language, and the prosecutor did not abuse her power by appropriately charging defendant under the Act's specific provisions. See *id*.

(a) "Act of terrorism" means a willful and deliberate act that is all of the following:

(i) An act that would be a violent felony under the laws of this state, whether or not committed in this state.

(ii) An act that the person knows or has reason to know is dangerous to human life.

(iii) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

On appeal, defendant asserts only that the prosecution failed to prove beyond a reasonable doubt the first element of an "act of terrorism," i.e., that defendant committed a violent felony as defined by the act. For purposes of the Act, MCL 750.543b(h) defines a "violent felony" as

. . . a felony in which an *element is the use, attempted use, or threatened use of physical force against an individual,* or the use, attempted use, or threatened use of a harmful biological substance, a harmful biological device, a harmful chemical substance, a harmful chemical device, a harmful radioactive substance, a harmful radioactive device, an explosive device, or an incendiary device. [Emphasis added.]

MCL 750.349, Michigan's kidnapping statute, provides:

(1) A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do 1 or more of the following:

* * *

(b) Use that person as a shield or hostage.

* * *

(2) As used in this section, "restrain" means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

By way of comparison, MCL750.349b, Michigan's unlawful imprisonment statute, employs a different definition of "restrain." For purposes of unlawful imprisonment, a person restrains another when he or she "*forcibly* restrict[s] a person's movements or . . . *forcibly* confine[s] the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a) (emphasis added). Thus, unlawful imprisonment requires an element of force, whereas kidnapping does not.

-4-

The prosecution failed to prove beyond a reasonable doubt the elements of terrorism because, as argued by both defendant and the prosecution on appeal, kidnapping is not a "violent felony" under MCL 750.543b(h). To find defendant guilty of kidnapping, the prosecution was required only to prove beyond a reasonable doubt that defendant knowingly restrained Ackron with the intent to accomplish one or more of the listed actions—in this case, the intent to use her as a "shield or hostage." MCL 750.349. Force is not a required element of the offense. Accordingly, kidnapping is not a violent felony as defined in MCL 750.543b(h). And without presenting sufficient evidence of a violent felony under MCL 750.543b(a)(i), the prosecution failed to prove beyond a reasonable doubt all the elements of an "act of terrorism," and, by extension, that defendant "knowingly and with premeditation commit[ed] an act of terrorism[,]" MCL 750.543f(1).

The prosecution, however, may still retry defendant for terrorism without running afoul of the Double Jeopardy clause of the United States Constitution. In *People v Watson*, 245 Mich App 572, 599-600; 629 NW2d 411 (2001), we were faced with a defendant who had been convicted for possession of a firearm during the commission of a felony (felony-firearm), with CSC I as the underlying felony. The defendant was also convicted of various other felonies. *Id*. at 574. This Court concluded that there was insufficient evidence to sustain the defendant's felony-firearm conviction because there was no evidence that he had committed CSC I while possessing a firearm. *Id*. at 595-596. Despite the reversal, however, we held that because "there [was] sufficient evidence to convict [the] defendant of felony-firearm using a different predicate offense, retrial using the applicable predicate offense is permitted." *Id*. at 601. Additionally, we held that a retrial did not violate Double Jeopardy precepts because "there was no evidentiary insufficiency equivalent to a verdict of acquittal in this case; instead, there was a defect in the charging instrument." *Id*. at 600 (citation and quotation marks omitted).

In this case, the prosecution introduced sufficient evidence to prove beyond a reasonable doubt the elements of kidnapping. But no matter how much evidence of kidnapping the prosecution produced, the offense could not properly serve as the predicate felony for terrorism because it is not a violent felony under the Act. See MCL 750.543b(a)(i) and (h). Sufficient evidence existed, however, to convict defendant of terrorism using a different predicate offense—indeed, the prosecution admits in its brief on appeal that it intends to retry defendant using unlawful imprisonment as the predicate felony. Thus, as in *Watson*, the prosecution may retry defendant using a proper predicate felony. See *Watson*, 245 Mich App at 601.

B. MCL 750.543M

MCL 750.543m provides, in pertinent part:

(1) A person is guilty of making a terrorist threat or making a false report of terrorism if the person does either of the following:

(a) Threatens to commit an act of terrorism and communicates the threat to any other person.

(b) Knowingly makes a false report of an act of terrorism and communicates the false report to any other person, knowing the report is false. [Emphasis added.]

-5-

The Michigan Supreme Court has explicitly held that a person may be convicted of threatening to commit an act of terrorism under MCL 750.543m(1)(a) without actually committing an act of terrorism or being convicted of terrorism under MCL 750.543b(a). *People v Osantowski*, 481 Mich 103, 110; 748 NW2d 799 (2008). As discussed above, MCL 750.543b(a) defines an "act of terrorism" as (1) a willful and deliberate act that (2) would constitute a violent felony, (3) that the defendant would have reason to know is dangerous to human life, and (4) is intended to intimidate or coerce a civilian population or affect the conduct of government or a unit of government through intimidation or coercion.

Again, defendant contends that the prosecution presented insufficient evidence to convict him of threatening an act of terrorism because the prosecution's predicate felony offense of kidnapping does not constitute a violent felony. However, the prosecution's theory for defendant's conviction was not that he threatened an act of terrorism, but rather that he knowingly made a false report of terrorism, particularly that he made a false report of a bomb threat or harmful device. This is demonstrated by the trial court's preliminary instructions to the jury and the prosecutor's closing arguments.

Prior to trial, the trial court gave the jury the following preliminary instruction:

Count 3, the defendant is charged with communicating a threat of committing a terrorist act or a false report of terrorism, Count 3. To prove this charge the prosecution must prove each of the following elements beyond a reasonable doubt. First, that the defendant threatened to commit an act of terrorism and communicated that threat to some other person; that the defendant knowingly made a false report of an act of terrorism and communicated that report to another person, knowing it to be false.

It is not a defense that the defendant did not have the intent or capability of committing the act of terrorism. *And terrorism means a willful and deliberate act that would be a violent felony under the laws of this state, whether or not committed in this state, to wit, kidnapping, and/or false report or threat of bomb/harmful device*, has reason to know is dangerous to human life, meaning that it can cause a substantial likelihood of death or serious injury and is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion. [Emphasis added.]

Further, in closing argument, the prosecution argued that making a false report of a bomb threat or harmful device would support a finding of a willful and deliberate act that constitutes a violent felony. The prosecutor stated:

And the last three - - the last two counts I'm going to talk about them together. 3 and 4 is a report of terrorism and a bomb threat and/or a harmful device. He reported it. He's the one got on the phone. He reported everything he was doing to the police. He told Ms. Ackron to call 911 because, "Now you're going to be my hostage," and she said she was shocked at first, but she did it. She talked to the police for a short while, and then he took over to let them know what

was going on. He reported that he had six pounds of - - he had some explosives, six pounds. He said he found out how to make it on the internet, according to the 911 tape and that he wanted them to look into what was going on. So he reported it himself. He reported that he had a bomb. And I don't have to prove that he actually had a bomb.

And as to the terrorist count, nothing in these counts say I have to prove that he actually had a bomb. The evidence is he didn't have a bomb, but none of the elements that the Court will read to you will say that I had to prove he had one. I have to prove that he reported that he had one just like he reported that a terrorist threat, and I've already submitted to you that I believe that we've submitted evidence beyond a reasonable doubt that he did commit the crime of terrorism, and the he reported it to the police agency. So I think based on that, I've submitted to you evidence beyond a reasonable doubt as to Counts 3 and 4.

To find defendant guilty of making a false report of a bomb threat or harmful device, the prosecution was required to prove that defendant knowingly made a false report of a bomb threat or harmful device and that he stated or implied that he had the ability to destroy, throw down or injure the whole or any part of any building or object, places or causes to be placed in, upon, under against or near such building or object any gun powder or other explosive substance which upon explosion causes the death of any person. MCL 750.411a(2)(a). Thus, making a false report of a bomb threat or harmful device constitutes a "violent felony" because an element of the crime is the use, attempted use, or threatened use of an explosive device. MCL 750.543(b)(h).

The prosecution presented sufficient evidence to prove beyond a reasonable doubt that defendant knowingly made a false report of an act of terrorism and communicated the false report to another person, knowing the report was false. First, he told Ackron that he had explosives, a detonator, and a blasting cap, although he in fact did not possess these items. He also told Westland Police Sergeant Steven Ewing that he was going to keep Ackron with him until the police officers resolved the situation to his liking, and he said that he would trade Ackron as a hostage if Sergeant Ewing sent in an unarmed police officer in her stead. Defendant additionally told Ackron that he would detonate his "bomb" if Sergeant Ewing and his partner entered the office. When Sergeant Ewing and his partner opened the door to the office, defendant said, "Don't do it, don't make me, I don't want to do this[,]" indicating that he would indeed detonate his explosives if they came closer. Defendant's statements to police officers certainly constitute making a false report of a bomb threat or harmful device while stating or implying that he had the ability to destroy any part of Westland City Hall. MCL 750.411a(2)(a). Therefore, the prosecution presented sufficient evidence to prove a willful and deliberate act that would constitute a violent felony. MCL 750.543b(h). Defendant should also have reasonably known that making these false reports of a bomb threat was dangerous to human life—even if only his own—and there is no question that he was attempting to "influence or affect the conduct of government or a unit of government through intimidation or coercion." MCL 750.543b(a)(ii) and (iii). The evidence therefore supported a conclusion that defendant thus knowingly made a false report of terrorism. MCL 750.543m(1)(b). Defendant, in turn, communicated the false reports of terrorism to Ackron, Sergeant Ewing, and the 911 dispatch operator. See *id*. The prosecution accordingly proved beyond a reasonable doubt that he made a false report of terrorism and communicated those threats to another person. *Id*.

-7-

III. OFFENSE VARIABLES

Defendant contends that the trial judge erred in assessing 25 points for Offense Variable (OV) 9 because Ackron was defendant's only victim, and that the judge further erred in assessing 100 points for OV 20 because defendant did not commit an act of terrorism. We agree with defendant's conclusions, albeit for slightly different reasons.

A defendant preserves the issue of a trial court's incorrect assessment of offense variables by objecting at sentencing or by filing a motion for resentencing or a proper motion for remand. See MCL 769.34(10); *People v Gibbs*, 299 Mich App 473, 491-492; 830 NW2d 821 (2013). Defense counsel objected at sentencing to the trial court's assessment of 25 points for OV 9. Counsel, however, did not object to the trial court's assessment of 100 points for OV 20, nor did he file a motion for resentencing or to remand. Thus, the issue of the trial court's assignment of 25 points to OV 9 is preserved, but the issue of the court's assignment of 100 points to OV 20 is unpreserved for appellate review. See MCL 769.34(10); *Gibbs*, 299 Mich App at 491. Nevertheless, we will review the OV 20 assessment because, when taking OV 20 into account, defendant's kidnapping sentence fell outside the appropriate guidelines range. See *Kimble*, 470 Mich at 310 (holding that MCL 769.34(10) "does not preclude appellate review if the sentence is outside the appropriate guidelines range, even if the party failed to raise the issue at sentencing, in a motion for resentencing, or in a motion to remand.").

A. OV 9

MCL 777.39 provides, in relevant part:

(1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(b) There were 10 or more victims who were placed in danger of physical injury or death, or 20 or more victims who were placed in danger of property loss............25 points

* * *

(d) There were fewer than 2 victims who were placed in danger of physical injury or death, or fewer than 4 victims who were placed in danger of property loss .........0 points

For purposes of OV 9, a sentencing court must "[c]ount each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a). "OV 9 is scored only on the basis of the defendant's conduct during the scoring offense." *People v Carrigan*, 297 Mich App 513, 515; 824 NW2d 283 (2012). "Property loss" under OV 9 may include financial loss. *People v Mann*, 287 Mich App 283, 286; 786 NW2d 876 (2010). A first responder may qualify as a victim, *People v Fawaz*, 299 Mich App 55, 63; 829 NW2d 259 (2012), as may a person who was unaware that he or she was in danger at the time of the offense, *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds by

495 Mich 876 (2013). A victim, however, must be a *direct* victim, not simply a member of the community who the crime affects indirectly. *Carrigan*, 297 Mich App at 515-516.

The trial court erred in assigning 25 points to OV 9.[2] The evidence indicated that, with or without explosives, defendant put Ackron in danger of physical injury by taking her hostage and making it clear that he would not allow her to leave. The same cannot be said of Sergeant Ewing and his partner, neither of whom were in danger of physical injury in spite of their justified belief that defendant had a bomb and was willing to use it. The identical principle obtains regarding the police officers and firefighters on the scene, who, though inconvenienced and probably rattled by the incident, were never in danger of death or physical injury.

As for the trial judge's opinion that Westland taxpayers and the community in general were victims for purposes of OV 9, this Court's holding in *Carrigan* is instructive. The defendant in that case vandalized two schools. *Carrigan*, 297 Mich App at 516. The trial judge assigned 25 points to OV 9 after stating that "this really was a crime against the community . . . ." *Id*. at 514-515. This Court reversed, holding that there were, at most, two victims of the defendant's conduct: the two schools whose property had been directly affected. *Id*. at 516. This Court further noted that "[u]nder the trial court's broad interpretation, nearly every criminal offense could result in a score of 25 points for OV 9 because the community as a whole always indirectly suffers when a crime is committed." *Id*.

The trial judge assigned 25 points to OV 9 partly because he considered the taxpayers who "owned" City Hall to be victims. He also considered every citizen of Westland a victim because they were somehow placed in jeopardy as a result of the necessary police and fire response to defendant's actions. As in *Carrigan*, any danger to person or property that the citizens of Westland faced as a result of defendant's conduct was, at best, indirect. Accordingly, as this Court concluded in *Carrigan*, under these facts the community at large cannot be considered victims under OV 9. This is especially true when there was no evidence to suggest that defendant actually damaged the building or put anyone besides Ackron in danger of physical injury. Thus, the trial judge erred in assessing 25 points for OV 9.

### B. OV 20

MCL 777.49a provides, in pertinent part:

---

[2]We acknowledge the Michigan Supreme Court's recent holding in *People v Lockridge*, 498 Mich 358, 364-365; 870 NW2d 502 (2015), which declared Michigan's sentencing guidelines unconstitutional to the extent that the guidelines "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range[.]" Defendant does not, however, assert a claim under *Lockridge*, and we accordingly do not consider the potential effect of the decision on his appeal.

(1) Offense variable 20 is terrorism. Score offense variable 20 by determining which of the following applies and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender committed an act of terrorism by using or threatening to use a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device ......................................100 points

(b)The offender committed an act of terrorism without using or threatening to use a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device ......................................50 points

* * *

(d) The offender did not commit an act of terrorism or support an act of terrorism, a terrorist, or a terrorist organization .......................................................................0 points

An "act of terrorism" under OV 20 is defined in MCL 750.543b(a), discussed at length above. MCL 777.49a(2)(a). The Michigan Supreme Court has held that a terrorist threat, even without other overt terrorist actions, may qualify as an "act of terrorism" under OV 20, so long as the threat itself satisfies the requirements of MCL 750.543b(a). See *Osantowski*, 481 Mich at 110.

The parties did not discuss OV 20 at sentencing, other than to agree that 100 points was appropriate given defendant's convictions. And despite the fact that we are reversing defendant's terrorism conviction, the trial court's assessment of 100 points could still stand because a conviction for making a terrorist threat may provide sufficient justification for assigning 100 points to OV 20. See *Osantowski*, 481 Mich at 110-111.

The evidence, however, did not support the assessment of 100 points for OV 20. An analysis of *Osantowski*, one of Michigan's only published cases involving the Anti-Terrorism Act, supports this conclusion. In *Osantowski*, the defendant, a high-school student, e-mailed a friend and threatened to commit "mass murder" at the school using firearms and pipe bombs that he was constructing. *Osantowski*, 481 Mich at 105. The defendant was convicted of making a terrorist threat, among other felonies. *Id*. At sentencing, the prosecution argued that the trial court should assess 100 points for OV 20 because the defendant had threatened to use an explosive device. *Id*. at 106. The trial court disagreed, assigning zero points to OV 20. *Id*. This Court reversed, holding that the trial court should have assigned 100 points to OV 20. *Id*. The Michigan Supreme Court reversed again, holding that, while a terrorist threat could warrant an assessment of 100 points for OV 20 under the proper circumstances, there was no evidence demonstrating that the defendant knew or had reason to know that his e-mail messages were dangerous to human life, as required by MCL 750.543b(a)(ii). *Id*. at 110, 112.

In this case, defendant threatened to detonate his "bomb" if his demands were not met or if Sergeant Ewing and his partner came into the mayor's office. This was clearly a threat to use an explosive device, which may, without more, be a "violent felony" under the Michigan Anti-Terrorism Act. See MCL 750.543b(h); *Osantowski*, 481 Mich at 110. In order to qualify as an

"act of terrorism," however, the threat must also have been "intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion[,]" and the defendant must have known or had reason to know that it was dangerous to human life. MCL 750.543b(a)(ii) and (iii).

Defendant certainly intended to influence or affect the conduct of the Westland Police Department and the city administration by threatening to detonate an explosive device; indeed, his only stated goal was to force them to check on Mazue's welfare. MCL 750.543b(a)(iii). And there is little doubt that defendant had reason to know that his overall conduct—taking Ackron hostage, telling the police officers that he had a bomb and was willing to detonate it, and telling Sergeant Ewing that he would keep Ackron with him until the police officers complied with his demands—was dangerous to at least his own life. Like the defendant in *Osantowski*, however, there was no evidence demonstrating that defendant knew or had reason to know that the *threats themselves* were dangerous to human life. Divorced from his conduct, defendant's statements were merely unsubstantiated threats that posed no direct danger to anyone. See *Osantowski*, 481 Mich at 112.

We acknowledge that there could be any number of facts in the record that might adequately justify an assessment of 100 points for OV 20—just as there may be any number of proper predicate felonies to support a conviction for terrorism upon retrial. Considering that the trial court provided absolutely no basis for its assessment, however, we need not concoct and rationalize every possible basis under which a 100-point assessment might be appropriate. Rather, we conclude that the trial court erred in assigning 100 points to OV 20 because the judge made no record to support his assessment and because defendant's threat, considered alone, was not an act of terrorism under MCL 750.543b(a). See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340.

In sum, the trial court erred in assigning 25 points to OV 9 and 100 points to OV 20. With a prior-record variable (PRV) total of 20 and an OV total of 130, these sentencing errors resulted in a sentencing guidelines range of 135 to 225 months. See MCL 777.62. Absent the errors, defendant's sentencing guidelines range would have been 42 to 70 months. See *id*. Accordingly, defendant is entitled to resentencing. See *People v Jackson*, 487 Mich 783, 793-794; 790 NW2d 340 (2010) (". . . a defendant is entitled to resentencing when the trial court erred in scoring an offense variable, and the error affected the statutory sentencing guidelines range.").

## IV. RESTITUTION

Defendant contends that the trial court erred in ordering him to pay $100,000 restitution to the city of Westland because the city suffered no actual losses and there was no documentary evidence to support the trial court's award. We agree.

A criminal defendant preserves the issue of a trial court's restitution order by objecting at the time of sentencing. *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003). Defendant objects to the trial court's restitution order for the first time on appeal. Thus, the issue is unpreserved and we review the trial court's restitution award for plain error affecting substantial rights. *Id*. A party claiming error must demonstrate that (1) an error occurred; (2) the

error was plain; and (3) the plain error affected a substantial right of the defendant. *Carines*, 460 Mich at 763-764.

Crime victims have both constitutional and statutory rights to restitution. Const 1963, art 1, § 24; *People v Grant*, 455 Mich 221, 229; 565 NW2d 389 (1997). The purpose of restitution is to "allow crime victims to recoup losses suffered as a result of criminal conduct." *Id*. at 230. The Crime Victims' Rights Act (CVRA), MCL 780.751 *et seq.*, determines whether a sentencing court's restitution order is appropriate. *Id*. at 233. MCL 780.766(1) defines a "victim" as "an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime." A governmental entity may also be a victim under the CVRA. *Id*. A trial court's restitution award is mandatory, not discretionary. MCL 780.766(2).

Importantly, however, "restitution is not a substitute for civil damages but only encompasses those losses that are (1) easily ascertained and measured, and (2) a direct result of the defendant's criminal acts." *People v White*, 212 Mich App 298, 316; 536 NW2d 876 (1995). Moreover, in order to be eligible for restitution, a loss must have been part of the factual foundation of the defendant's conviction. *People v McKinley*, 496 Mich 410, 419; 852 NW2d 770 (2014). A sentencing court should calculate the amount of loss based on the evidence. *People v Cross*, 281 Mich App 737, 738; 760 NW2d 314 (2008).

Finally, "[o]nly an actual dispute, properly raised at the sentencing hearing in respect to the type or amount of restitution, triggers the need to resolve the dispute by a preponderance of the evidence." *Grant*, 455 Mich at 243, citing MCL 780.767(4). In the absence of a dispute, the trial court is not required to make a separate factual finding on the record regarding restitution and may simply rely on the recommendation in the presentence report. *Grant*, 455 Mich at 243.

The trial court erred in ordering defendant to pay $100,000 restitution to the city of Westland. In the absence of a dispute, a court is entitled to rely on the presentence investigation report for restitution information—but the report provided that the restitution amount was zero. See *Id*. at 243. Given the gaping disparity between the recommended restitution amount and the judge's award, the lack of evidence in the record that defendant injured anyone or caused damage to city property, and the complete absence of testimony or explanation on the issue at sentencing, we cannot ascertain how the court arrived at its restitution amount. It appears, however, that the $100,000 figure was neither based on the evidence, see *Cross*, 281 Mich App at 738, nor a loss occasioned as a direct result of defendant's criminal acts, see *White*, 212 Mich App at 316. The court's $100,000 restitution order, in the absence of any explanation and factual findings, failed to comply with the CVRA. The court's error undoubtedly affected defendant's substantial rights because he was ordered to pay much more restitution than the CVRA required, *Carines*, 460 Mich at 763, so this plain error was prejudicial. See *id*.; *Newton*, 257 Mich App at 68.

Affirmed in part, reversed in part, and remanded for resentencing and a determination of the appropriate restitution amount, if any. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Kurtis T. Wilder
/s/ Christopher M. Murray