PEOPLE v CRIGLER

Docket No. 220111. Submitted June 13, 2000, at Detroit. Decided January 26, 2001, at 9:10 A.M.

Eric R. Crigler pleaded guilty in the Oakland Circuit Court, Nanci J. Grant, J., to three counts of delivery of marijuana. The convictions arose out of three separate purchases made by undercover officers with the Michigan State Police Narcotics Enforcement Team (NET). Because of the ongoing investigation, the defendant was not arrested after the first two transactions, and the money used to make those purchases was not recovered. In sentencing the defendant, the court not only imposed on the defendant concurrent prison terms, but also ordered the defendant to pay as restitution to the NET pursuant to the provisions of the Crime Victim's Rights Act (CVRA), MCL 780.751 et seq.; MSA 28.1287(751) et seq., the amount of money that had been expended as a result of the first two transactions. The defendant appealed by leave granted, arguing that the trial court should not have ordered restitution of the funds that had not been recovered by the NET.

The Court of Appeals held:

1. Section 16 of the CVRA, MCL 780.766; MSA 28.1287(766), as amended, provides that a court in sentencing a convicted defendant must order the defendant to make full restitution to any victim of the defendant's course of conduct leading to the conviction for which the defendant is being sentenced, that a victim is an individual that suffers financial harm as a result of the commission of a crime, and that a victim includes a government entity that suffers financial harm as the result of a crime.

2. Although the Court of Appeals in People v Chupp, 200 Mich App 45 (1993), held that a government agency was not a victim within the meaning of the definition of that term as then used in the CVRA, the Legislature subsequently enacted 1993 PA 341, which amended § 16 to provide that a victim for the purpose of that section of the act may include a government entity. Accordingly, the question whether the NET is a victim that is entitled to restitution turns on whether the Legislature intended the loss of the money used by a police agency to make a controlled purchase of illegal

narcotics to constitute a financial harm that results from the commission of a crime within the meaning of § 16.

3. The permanent loss by a government agency of money used to make drug purchases during the course of a criminal investigation clearly causes financial harm to the agency, and the loss is clearly the result of the commission of a crime, that being the defendant's illegal sale of narcotics. There is nothing in the statutory language that suggests that a financial loss that occurs during the course of a criminal investigation is not the type of harm contemplated by the statute. The plain language indicates an intent by the Legislature that a government agency involved in narcotics enforcement is entitled pursuant to the provisions of § 16 of the CVRA to an order of restitution requiring a criminal defendant to repay to the agency funds that were expended by the agency in the purchase of illegal narcotics from the defendant.

4. The trial court did not err in failing to take into account the defendant's poverty and other financial obligations before ordering restitution, because the CVRA no longer includes a defendant's ability to pay among the factors to be considered when determining the amount of restitution.

Affirmed.

1. SENTENCES — CONTROLLED SUBSTANCES — RESTITUTION — CRIME VICTIM'S RIGHTS ACT — GOVERNMENT AGENCIES — HARM — DRUG PURCHASE FUNDS.

The Legislature by its 1993 amendment of § 16 of the Crime Victim's Rights Act evidenced a clear intent that a government agency involved in narcotics enforcement is entitled pursuant to the provisions of that section to an order of restitution as a part of a sentence of a convicted defendant that requires the defendant to repay to the agency any funds that were expended by the agency as a result of the agency's purchase of illegal narcotics from the defendant, but that had never been recovered by the agency (MCL 780.766; MSA 28.1287[766]).

2. SENTENCES — RESTITUTION — CRIME VICTIM'S RIGHTS ACT — FINANCIAL ABILITY.

A court in imposing an order of restitution pursuant to the provisions of the Crime Victim's Rights Act as part of a criminal sentence entered after June 1, 1997, does not have to include a defendant's ability to pay among the factors to be considered in determining the amount of restitution (MCL 780.767; MSA 28.1287[767]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Pros-

ecuting Attorney, *Daniel L. Lemisch*, Chief, Appellate Division, and *Thomas R. Grden*, Assistant Prosecuting Attorney, for the people.

*Arthur H. Landau*, for the defendant.

Before: OWENS, P.J., and NEFF and FITZGERALD, JJ.

OWENS, P.J. Defendant appeals by leave granted from his guilty plea conviction of three counts of delivery of marijuana, MCL 333.7401(2)(d)(iii); MSA 14.15(7401)(2)(d)(iii). He was sentenced as a second-offense drug offender, MCL 333.7413(2); MSA 14.15(7413)(2), to three concurrent terms of 2½ to 8 years' imprisonment. Defendant was also ordered to pay $7,650 in restitution to the Michigan State Police Narcotics Enforcement Team (NET) for the "buy money" that was expended to purchase marijuana during the course of defendant's criminal transactions. Defendant argues that the trial court should not have ordered the restitution. We affirm.

At the plea hearing, defendant admitted that he delivered marijuana on three different dates. The first transaction involved the sale of 448.4 grams of marijuana to undercover NET police officers for $1,350. The second transaction involved the sale of 2,753 grams of marijuana for $6,300. The police did not recover the "buy money" from either of these transactions. The final transaction involved the sale of 5,448 grams of marijuana for $12,300; the "buy money" from the final transaction was recovered. Defendant also admitted that he was previously convicted of delivery of a controlled substance.

On appeal, defendant argues that the trial court erred in ordering defendant to pay restitution to the

NET for the unrecovered "buy money" that the NET
expended to purchase the evidence (marijuana) of
defendant's criminal activity. The determination
whether defendant was properly ordered to pay resti-
tution to the NET necessarily depends on whether the
trial court was authorized by statute to impose such a
sentence. This determination involves the interpreta-
tion of the governing sentencing statutes, a question
of law that is reviewed de novo on appeal. *People v
Denio*, 454 Mich 691, 698; 564 NW2d 13 (1997). The
purpose of statutory interpretation is to give effect to
the intent of the Legislature. *Id.* at 699. If a statute is
clear, it must be enforced as written. *Id.* However, if
a statute may reasonably be read to have different
meanings, judicial construction is required. *Id.* As this
Court summarized in *People v Fox (After Remand)*,
232 Mich App 541, 553-554; 591 NW2d 384 (1998):

> Our goal in interpreting statutes is to ascertain the intent
> of the Legislature. The first criterion in determining the Leg-
> islature's intent is the specific language of the statute. If the
> plain and ordinary meaning of the language is clear, judicial
> construction is normally neither permitted nor necessary. In
> interpreting statutes, words are to be given their common,
> generally accepted meaning. The court should presume that
> every word has some meaning and should avoid any con-
> struction that would render a statute, or any part of it, sur-
> plusage or nugatory. [Citations omitted.]

The Crime Victim's Rights Act (CVRA), MCL 780.751
*et seq.*; MSA 28.1287(751) *et seq.*, was enacted to
enable victims to be compensated fairly for their suf-
fering at the hands of convicted offenders. *People v
Peters*, 449 Mich 515, 526; 537 NW2d 160 (1995). The
provision at issue, § 16 of the CVRA, MCL 780.766; MSA
28.1287(766), requires the mandatory imposition of

restitution by the sentencing court, providing in pertinent part:

> (1) For the purposes of this section only, "victim" means an individual who suffers direct or threatened physical, *financial*, or emotional *harm as a result of the commission of a crime.* For purposes of subsections (2), (3), (6), (8), (9), and (13), victim includes a sole proprietorship, partnership, corporation, association, *governmental entity*, or any other legal entity that suffers direct physical or financial harm as a result of a crime.
>
> (2) Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, *that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction* or to the victim's estate.
>
> (3) If a crime results in damage to *or loss or destruction of property of a victim of the crime*, . . . the order of restitution may require that the defendant do 1 or more of the following, as applicable:
>
> (a) Return the property to the owner of the property or to a person designated by the owner.
>
> (b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (*i*) or (*ii*), less the value, determined as of the date the property is returned, of that property or any part of the property that is returned:
>
> (*i*) The value of the property on the date of the damage, loss, or destruction.
>
> (*ii*) The value of the property on the date of sentencing. [Emphasis supplied.]

In *People v Chupp*, 200 Mich App 45, 49; 503 NW2d 698 (1993), this Court held that under the then-existing statutory definition of "victim" contained in subsection 16(1), a law enforcement agency was not a victim where "its members decided to expend $1,400

for the drug deal with defendant." However, the *Chupp* decision is not controlling because at the time this Court decided *Chupp*, the statute did not specifically provide that a governmental entity could be a "victim." This Court reasoned:

> A governmental agency such as CMET [Central Michigan Enforcement Team] does not fit within the definition of victim provided in subsection 1 above because it is not an individual, sole proprietorship, partnership, or corporation. Subsection 10 is also inapplicable because CMET is not a victim as that term is described in the statute or a victim's estate and it did not compensate a victim or a victim's estate. Where a statute provides its own glossary, the terms must be applied as expressly defined.
>
> In addition, if the maxim *expressio unius est exclusio alterius* is applied to the restitution provision of the act, one result is that only the parties expressly granted the right to invoke the provisions of the statute may do so; *a governmental entity such as* CMET therefore may not receive restitution under the statute. Because governmental entities are not explicitly listed as possible victims, it is presumed that such omission is an exclusion, and a governmental entity may not recover restitution. In essence, CMET may indeed be a "victim" of defendant's criminal activity because its members decided to expend $1,400 for the drug deal with defendant, but it may not be considered a "victim" under the definition expressly provided in the statute. [*Chupp*, *supra* at 49 (emphasis supplied and citations omitted).]

After the *Chupp* decision, the Legislature amended the CVRA to provide that a "governmental entity" could be a "victim." 1993 PA 341. Thus, the Legislature has addressed the statutory oversight noted by this Court in *Chupp*, and the statute, as currently written and applicable to defendant, clearly provides that a "governmental entity," which the NET clearly is, may qual-

ify as a "victim." However, in this issue of first impression following the legislative amendment of the CVRA, we must still determine if the loss of the "buy money" is a financial harm that results from the commission of the crime, MCL 780.766(1); MSA 28.1287(766)(1).

Section 16 requires that in order to qualify as a "victim," the person or entity must "suffer[] direct or threatened physical, financial, or emotional harm as a result of the commission of a crime." *Random House Webster's College Dictionary* defines "harm" using the words "injury," "damage," and "hurt." Under the common, generally accepted meaning of the word "harm," the permanent loss of $7,650 is, in and of itself, a financial harm to the NET.

In addition, narcotics enforcement teams are typically joint law enforcement projects that involve county and state police resources. These teams, scattered around the state and responsible for the investigation of narcotics trafficking within specified regions, generally have limited amounts of buy money available to make narcotics purchases. When the enforcement teams fail to recover some or all of the buy money used to make narcotics purchases from particular drug dealers, the ability of these teams to make other narcotics purchases in the course of future investigations is impaired, and they are therefore clearly financially harmed. Thus, to the extent that the NET lost $7,650 and its ability to conduct further narcotics investigations was curtailed because of this loss, the NET was "injured or damaged" within the commonly used meaning of the word "harm."

Furthermore, there is nothing in the statutory language that suggests that when the financial loss takes

place during the course of a criminal investigation, no "harm" occurs. The loss of buy money is qualitatively unlike the expenditure of other money related to a criminal investigation, because it results directly from the crime itself; that is, the money is lost when it is exchanged for the controlled substance. The payment of salaries and overtime pay to the investigators, the purchase of surveillance equipment, the purchase and maintenance of vehicles, and other similar expenditures are "costs of investigation" unrelated to a particular defendant's criminal transaction. These expenditures would occur whether or not a particular defendant was found to be engaged in the sale of controlled substances. However, the loss of the buy money used to purchase specific controlled substances from the subject of a criminal investigation directly results from the commission of a crime, and it causes financial harm to the governmental entity involved—the narcotics enforcement team.[1]

Therefore, we conclude from the plain language of the statute, as well as from the intent behind the CVRA, that the Legislature intended to permit narcotics enforcement teams to obtain restitution of buy money lost to a defendant as a result of the defendant's criminal act of selling controlled substances.

---

[1] We note that ordinary citizens who purchase narcotics would not be entitled to restitution of the money expended by them to obtain controlled substances. Under the exemption provided by MCL 333.7531(3); MSA 14.15(7531)(3), police officers do not commit a crime when purchasing controlled substances provided that they are "engaged in the lawful performance of [their] duties." However, ordinary citizens do not benefit from the same exemption. Thus, purchases of controlled substances by ordinary citizens are illegal and, having obtained the ill-gotten goods they sought for their personal use, they cannot be heard to complain that they have been harmed.

Defendant also argues that the trial court failed to take into account defendant's poverty and other financial obligations when ordering restitution. This argument is without merit. Since June 1, 1997, MCL 780.767; MSA 28.1287(767) no longer includes the defendant's ability to pay among the factors to be considered when determining the amount of restitution.

Affirmed.