PEOPLE v NEWTON

Docket No. 238085. Submitted June 3, 2003, at Lansing. Decided June 10, 2003, at 9:10 A.M.

Kevin W. Newton was convicted by a jury in the Barry Circuit Court, James H. Fisher, J., of selling alcohol without a license. He appealed, alleging that the statute that he was convicted of violating, MCL 436.1203(1), is unconstitutionally vague because it does not provide fair notice of the conduct proscribed and confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. The defendant also alleged that the trial court erred in ordering him to pay restitution to the county sheriff's department to reimburse the department for its costs associated with the investigation of the defendant's activities.

The Court of Appeals held:

1. The definition of "sale" provided in the Liquor Control Code, MCL 436.1111(7), provides fair notice that the act of exchanging alcohol for a donation constitutes a "sale" for purposes of MCL 436.1203(1).

2. The clear definition of the term "sale" does not give the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed. The relevant statutes are not unconstitutionally vague.

3. A governmental entity that suffers direct physical or financial harm as a result of a crime is entitled to restitution under MCL 780.766(1). The general cost of investigating and prosecuting criminal activity is not direct financial harm suffered as a result of a crime. The part of the order requiring reimbursement of the sheriff's department's costs of the investigation must be vacated.

Conviction and sentence affirmed; restitution provision vacated.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *G. Shane McNeill*, Prosecuting Attorney, and *William E. Molner*, Assistant Attorney General, for the people.

State Appellate Defender (by *Deborah Winfrey Keene*) for the defendant on appeal.

Before: FITZGERALD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of one count of selling alcohol without a license, MCL 436.1203, and was sentenced as an habitual offender, second offense, MCL 769.10, to five years' probation, with the first six months to be served in jail. Defendant was also ordered to pay a fee of $60 to a crime-victim fund, restitution in the amount of $2,500 for overtime expenses incurred by the Barry County Sheriff's Department for the investigation, costs of $1,000, and a fine of $1,000. We affirm defendant's conviction and sentence, but vacate the restitution provision of the judgment of sentence.

I

Defendant is the owner of a barn located at 3767 Jordan Road in Barry County. His house is adjacent to the barn property. In 2000, James McManus, the Barry County planning director, began receiving complaints regarding possible zoning violations at the property. David Tonkin, an enforcement agent for the Barry County Planning and Zoning Department, visited defendant's property on September 22, 2000, to investigate the complaints. During Tonkin's discussions with defendant, defendant explained that he held parties for people and was providing a service to the community so that people had a place to go and have parties. Defendant told Tonkin that all he charged was the refunds he received from the cans and bottles left on the property.

The Barry County Sheriff's Department also began receiving complaints regarding the activities at the barn. Deputy James Fawcett testified that he was dispatched to the barn several times beginning in the summer of 2000 and continuing through April 2001. During these visits, Fawcett observed people at the barn drinking beer and noted that cars were parked on both sides of Jordan Road as far as two hundred yards up the road. He also observed a designated parking area marked by a parking sign between the house and the barn. On at least one occasion he requested that the music in the barn be turned down.

On October 14, 2000, Detective Richard Pazder of the Michigan State Police and Detective Dan Latta conducted an undercover investigation of the barn. When the two arrived at the barn, Pazder saw thirty or more cars parked near the barn. Pazder and Latta tried to walk into the barn, but were stopped by a woman near the door and were asked to make a donation to get into the barn. Pazder and Latta each paid two dollars to gain entry. After making the donation, Pazder and Latta each received a stamp on their hands that said "Hanging Out."

Pazder went to the third floor of the barn and noticed a disc-jockey booth overlooking a dance floor. The third floor also contained a few sofas and tables along the side of the floor. Pazder estimated that there were between thirty and forty people on the third floor of the barn who were either dancing or sitting and drinking alcohol. On the second floor of the barn, Pazder noticed a pool table, a row of barstools, some tables, and a stand that could be used for selling alcohol. Approximately ten people were on the second floor, either playing pool or sitting and drinking alcohol.

About an hour and a half after arriving at the barn, Pazder approached the same woman who had asked for a donation to enter the barn. Behind the table where the woman was sitting was a cooler that had a clear-glass door and that contained beer. Pazder asked if he could buy a beer. The woman responded that it was "her own personal stash" but that she would sell Pazder a beer for two dollars.

About thirty minutes later, Pazder went back to the main floor and noticed defendant at the table where the woman had been sitting. Pazder told defendant that he wanted to buy another beer from the woman. Defendant told Pazder that he could not buy a beer, but that he could get a beer for a two-dollar donation. Pazder paid defendant the two dollars, and defendant put the money in his pocket and stated that he would ensure that the money got to its rightful owner.

A search warrant was executed at the barn on October 14, 2000. Deputy Gary Pearson was the evidence technician. He testified that both sealed and unsealed containers of alcohol were found in the barn. In addition, he seized a document that read "Back By Popular Demand: Party at the Barn" that gave a date and time. The poster also indicated, "Must be 21 to drink. B.Y.O.B." Similar invitations were found throughout the barn. Pearson also found a stamp that stated "Party Palace," an ink pad, and a black magic marker, along with fourteen identification cards bearing the words "Party Palace," each containing a photograph of a different individual with the individual's date of birth on the back of the card. He also found a document that stated "Party Palace, T-shirts, all sizes" and indicated a dollar amount for the shirts. A cash box containing $35 was also found on the premises.

Defendant's brother, Ronald Newton, testified that the barn was modified for small parties of approximately 100 to 150 family members and friends. He has never heard of defendant's charging a cover charge to get into the parties and never observed defendant sell alcohol.

Sandra Newton, defendant's wife, testified that she never charged people to get into the barn and did not serve or sell alcohol. She testified that she checked ID's to make sure that minors did not drink on the premises. She further testified that guests at the barn would give a donation if they wanted to, but that she never asked for a donation.

II

Defendant first argues that MCL 436.1203(1) is unconstitutionally vague because it does not provide fair notice of the proscribed conduct and because it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. Defendant did not raise this issue before the trial court. This Court reviews unpreserved constitutional claims for plain error that affected a defendant's substantial rights, *People v Carines*, 460 Mich 750, 763, 773; 597 NW2d 130 (1999), and will reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.* at 763. Further, a presumption exists that a statute is constitutionally sound, and this Court will construe it as such unless its unconstitutionality is "clearly apparent." *People v Hubbard (After Remand)*, 217 Mich App 459, 483-484; 552 NW2d 493 (1996).

MCL 436.1203(1) provides:

> Except as provided in this section and section 301, a sale, delivery, or importation of alcoholic liquor, including alcoholic liquor for personal use, shall not be made in this state unless the sale, delivery, or importation is made by the commission, the commission's authorized agent or distributor, an authorized distribution agent approved by order of the commission, a person licensed by the commission, or by prior written order of the commission.

Defendant argues that the "sale" and "delivery" language of MCL 436.1203(1) is unconstitutionally vague on its face and as applied to this case. A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the conduct proscribed, (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, or (3) its coverage is overbroad and impinges on First Amendment freedoms. *People v Howell,* 396 Mich 16, 20; 238 NW2d 148 (1976). Defendant is not challenging the statute as being overbroad and impinging on First Amendment freedoms.

> When a defendant's vagueness challenge does not implicate First Amendment freedoms, the constitutionality of the statute in question must be examined in light of the particular facts at hand without concern for the hypothetical rights of others. The proper inquiry is not whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct allegedly proscribed in this case. [*People v Vronko,* 228 Mich App 649, 652; 579 NW2d 138 (1998) (internal citations omitted).[1]]

---

[1] See also *People v Al-Saiegh,* 244 Mich App 391, 397 n 5; 625 NW2d 419 (2001) (a vagueness challenge must be viewed in light of the facts presented in the case at bar).

Defendant argues that the term "sale" is unconstitutionally vague because an ordinary person cannot understand what conduct is prohibited. He contends that the statute proscribes the sale of alcohol and does not provide fair notice that the exchange of alcohol for a donation is likewise proscribed.[2]

The Michigan Liquor Control Code specifically defines the meaning of the word "sale" as it is used in MCL 436.1203(1). The act defines "sale" to include "the exchange, barter, traffic, furnishing, or giving away of alcoholic liquor." MCL 436.1111(7). Thus, defendant's argument that the statute precludes only the selling of alcoholic liquor, and not the exchange of alcoholic liquor for a donation, is without merit. The explicit definition provided in the act provides notice that the exchange of alcohol constitutes a "sale" for purposes of subsection 203(1). Thus, we reject defendant's argument that the statute is unconstitutionally vague.[3]

Defendant also argues that the statute gives the trier of fact unlimited discretion to determine whether an offense has been committed. He contends that he was selectively singled out for prosecution because his neighbors did not like the fact that he was noisy. We disagree. Because the act clearly defines the word "sale" to include the "exchange, barter, traffic, furnishing, or giving away of alcoholic liquor," the statute does not confer unstructured and

---

[2] Defendant also contends that the statute is vague for other reasons and offers hypothetical facts to support the additional arguments. As we stated previously, we need not address hypothetical arguments that are not based on the facts of this particular case.

[3] To the extent that defendant contends that he would have been deemed to have committed the same crime even if he had not received a two-dollar donation for the beer, those facts are not before this Court and we will not entertain this hypothetical argument.

unlimited discretion on the trier of fact to determine whether an offense has been committed. Rather, the jury was limited by the clear definition of the term "sale" provided in the act.

III

Defendant argues that the trial court erred in ordering him to pay $2,500 to the Barry County Sheriff's Department as reimbursement for its cost in the investigation of defendant. Defendant failed to object to the restitution order at the time of sentencing and, therefore, we will review this unpreserved nonconstitutional issue for plain error affecting defendant's substantial rights. *Carines, supra.*

While a reviewing court typically reviews the amount of a restitution order for an abuse of discretion, *People v Tyler,* 188 Mich App 83, 87-89; 468 NW2d 537 (1991), the question presented here, whether the sheriff's department, as a victim, is entitled to restitution for the costs of its investigation, presents an issue of statutory interpretation that we review de novo. *Eggleston v Bio-Medical Applications of Detroit, Inc,* 468 Mich 29; 658 NW2d 139 (2003).

Restitution is afforded both by statute and by the Michigan Constitution. Const 1963, art 1, § 24; *People v Grant,* 455 Mich 221, 229; 565 NW2d 389 (1997). The purpose of restitution is to "allow crime victims to recoup losses suffered as a result of criminal conduct." *Id.* at 230. The Crime Victim's Rights Act, MCL 780.751 *et seq.,* determines whether a sentencing court's restitution order is appropriate. *People v Crigler,* 244 Mich App 420, 423; 625 NW2d 424 (2001). Victims entitled to restitution include a "governmental

entity, or any other legal entity that suffers direct physical or financial harm as a result of a crime." MCL 780.766(1).

Neither this Court nor the Supreme Court has been directly presented with the question whether a law-enforcement agency that expends money investigating a defendant suffers direct "financial harm as a result of a crime." However, in *Crigler, supra,* in determining whether "buy money" that was lost during the commission of an unlawful drug transaction constitutes financial harm that results from the commission of a crime, this Court stated, in dicta:

> The loss of buy money is qualitatively unlike the expenditure of other money related to a criminal investigation, because it results directly from the crime itself; that is, the money is lost when it is exchanged for the controlled substance. The payment of salaries and overtime pay to the investigators, the purchase of surveillance equipment, the purchase and maintenance of vehicles, and other similar expenditures are "costs of investigation" unrelated to a particular defendant's criminal transaction. These expenditures would occur whether or not a particular defendant was found to be engaged in the sale of controlled substances. However, the loss of the buy money used to purchase specific controlled substances from the subject of a criminal investigation directly results from the commission of a crime, and it causes financial harm to the governmental entity involved—the narcotics enforcement team. [*Id.* at 427.]

Here, the cost of the investigation would have been incurred without regard to whether defendant was found to have engaged in criminal activity. We therefore agree with the reasoning in *Crigler,* and conclude that, under the plain language of the statute, the general cost of investigating and prosecuting criminal

activity is not direct "financial harm as a result of a crime." Thus, we hold that the trial court erred in ordering defendant to pay $2,500 restitution to the Barry County Sheriff's Department.

We vacate that portion of the judgment of sentence awarding restitution and we affirm the remainder of the judgment.