# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CHRISTOPHER GEORGE WAHMHOFF,

       Defendant-Appellant.

UNPUBLISHED
February 28, 2017

No. 330211
Calhoun Circuit Court
LC No. 2013-002745-FH

Before: HOEKSTRA, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Defendant, Christopher George Wahmhoff, was convicted after a bench trial of resisting and obstructing a police officer, MCL 750.81d(1), and trespassing, MCL 750.552(1). The trial court sentenced him to 12 months' probation and 60 days in jail, to be suspended, for his resisting and obstructing conviction and ordered defendant to pay a fine for his trespassing conviction. After a hearing, defendant was ordered to pay a total of $4,301.28 in restitution. Defendant now appeals as of right, solely challenging the restitution order. We vacate the restitution order and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

On June 24, 2013, at some time before employees arrived at 7:00 a.m., defendant crawled inside a pipeline on Enbridge, Inc., property in Fredonia Township, Michigan. When deputies arrived, defendant stated that he would not leave the pipe until 5:00 p.m., as he intended to disrupt an entire workday for Enbridge in an act of protest. Fire personnel were called to the scene because defendant was in a confined space, and an overpowering chemical odor could be smelled inside the pipe. Accordingly, at least one ventilation fan was placed at the end of the pipe to ensure that defendant received fresh air while he remained inside, and firefighters and police personnel remained on site, prepared to respond if defendant lost consciousness. As promised, defendant exited the pipe at approximately 5:00 p.m. and was taken into custody.

## II. JUDICIAL FACT-FINDING AND RESTITUTION

Defendant contends that the restitution award should be vacated because he was entitled to have the amount of restitution determined by a jury under the Sixth and Fourteenth Amendments of the United States Constitution. We disagree.

-1-

## A. STANDARD OF REVIEW

"A Sixth Amendment challenge presents a question of constitutional law that this Court reviews de novo." *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015).

## B. ANALYSIS

We previously rejected this argument in *People v Corbin*, 312 Mich App 352, 371-373; 880 NW2d 2 (2015). In that case, we held that judicial fact-finding to determine the appropriate amount of restitution does not implicate a defendant's Sixth Amendment right to a jury trial. *Id*. at 372-373. Likewise, we expressly stated that the Michigan Supreme Court's recent decision in *Lockridge*, 498 Mich 358, does not apply to restitution orders entered in conjunction with sentencing. *Corbin*, 312 Mich App at 373 n 5. We are bound by that decision. MCR 7.215(J)(1).

Additionally, like the defendant in *Corbin*, defendant's reliance on *Southern Union Co v United States*, ___ US ___; 132 S Ct 2344; 183 L Ed 2d 318 (2012), is misplaced. In that case, the United States Supreme Court held that the determination of any fact, except the existence of a prior conviction, which increases a defendant's maximum potential sentence, including a sentence consisting of a criminal fine, must be determined by a jury. *Southern Union*, 567 US at ___; 132 S Ct at 2348-2349, 2357. As we observed in *Corbin*, "[a] criminal fine and restitution are not synonymous . . . ." *Corbin*, 312 Mich App at 372.

Accordingly, defendant's argument fails.

## III. CALCULATION OF RESTITUTION

Defendant also argues that the trial court's award of restitution was an abuse of discretion because it was speculative, arbitrary, and based on costs or losses that are not eligible for reimbursement as restitution. Although we disagree with defendant's claim that the responding government entities necessarily are entitled to no restitution in this case, we agree with defendant that the trial court's restitution award was improper.

## A. STANDARD OF REVIEW

We generally "review a court's calculation of a restitution amount for an abuse of discretion and its factual findings for clear error." *Corbin*, 312 Mich App at 361 (citation omitted). "A trial court may abuse its discretion by blurring the distinction between a civil remedy for damages and the criminal penalty of restitution." *Id*. However, "when the question of restitution involves a matter of statutory interpretation, the issue is reviewed de novo as a question of law." *People v Dimoski*, 286 Mich App 474, 476; 780 NW2d 896 (2009); see also *Corbin*, 312 Mich App at 361.

## B. ANALYSIS

Crime victims have a right to restitution under both the Michigan Constitution and Michigan statutory law. *People v Bell*, 276 Mich App 342, 346; 741 NW2d 57 (2007); see also Const 1963, art 1, § 24; MCL 769.1a; MCL 780.766. "The purpose of restitution is to allow

crime victims to recoup losses suffered as a result of criminal conduct." *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003) (quotation marks and citation omitted).

"The Crime Victim's Rights Act [("CVRA")], MCL § 780.751 *et seq.*, determines whether a sentencing court's restitution order is appropriate." *Newton*, 257 Mich App at 68. Pursuant to MCL 780.766(2), "when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction . . . ." A "victim" includes, among other things, a "governmental entity[] or any other legal entity that suffers direct physical or financial harm as a result of a crime." MCL 780.766(1); see also *Newton*, 257 Mich App at 68-69.[1]

As we explained in *Corbin*, 312 Mich App at 360:

> The CVRA provides that the prosecution has the burden of proving by a preponderance of the evidence the amount of the victim's loss. MCL 780.767(4). "MCL 780.766(2) requires a direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded." *People v McKinley*, 496 Mich 410, 421; 852 NW2d 770 (2014). This Court has held that court-ordered restitution is not a substitute for civil damages. *People v Tyler*, 188 Mich App 83, 89; 468 NW2d 537 (1991).

Thus, "[t]he CVRA . . . permits an award only for losses factually and proximately caused by the defendant's offense." *Corbin*, 312 Mich App at 369; see also *id*. (describing factual and proximate causation). It does not permit restitution for "speculative or conjectural losses." *Id*. at 365. But "[w]here the evidence provides a reasonably certain factual foundation for a restitution amount, the statutory standard is met." *Id*.; see also *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997) (considering a former version of the CVRA and indicating the information on which a trial court may rely in calculating restitution); *People v Guajardo*, 213 Mich App 198, 200; 539 NW2d 570 (1995) (also interpreting a former version of the CVRA and concluding that the amount of restitution "should be based upon the evidence").

We agree with defendant that the CVRA does not permit a sentencing court to order restitution for the general costs of criminal investigations and prosecutions. In *People v Crigler*, 244 Mich App 420, 422, 427; 625 NW2d 424 (2001), we held that a law enforcement agency can "obtain restitution of buy money lost to a defendant as a result of the defendant's criminal act of selling controlled substances," which was never recovered by the police. Recognizing that an entity must incur "physical, financial, or emotional harm" as a result of the crime in order to be entitled to restitution under MCL 780.766(1), we noted that "harm" is defined in the dictionary "using the words 'injury,' 'damage,' and 'hurt.' " *Id*. at 426 (quotation marks and citation omitted). Accordingly, we concluded that "the permanent loss" of the buy money was a financial harm to the law enforcement agency, reasoning that law enforcement's ability to

---

[1] Michigan's general restitution statute, MCL 769.1a, is substantively identical in all relevant respects to the provisions of the CVRA discussed in this opinion. See MCL 769.1a(1)(b), (2).

conduct narcotics purchases in future investigations is impaired when the agency is unable to recover buy money from narcotics purchases that result in convictions. *Id.* We also drew the following distinction between the loss of the buy money and the law enforcement agency's other expenses:

> [T]here is nothing in the statutory language that suggests that when the financial loss takes place during the course of a criminal investigation, no "harm" occurs. The loss of buy money is qualitatively unlike the expenditure of other money related to a criminal investigation, because it results directly from the crime itself; that is, the money is lost when it is exchanged for the controlled substance. The payment of salaries and overtime pay to the investigators, the purchase of surveillance equipment, the purchase and maintenance of vehicles, and other similar expenditures are "costs of investigation" unrelated to a particular defendant's criminal transaction. These expenditures would occur whether or not a particular defendant was found to be engaged in the sale of controlled substances. However, the loss of the buy money used to purchase specific controlled substances from the subject of a criminal investigation directly results from the commission of a crime, and it causes financial harm to the governmental entity involved—the narcotics enforcement team. [*Id.* at 427.]

Later, in *Newton*, we addressed "whether a law-enforcement agency that expends money investigating a defendant suffers direct 'financial harm as a result of a crime.' " *Newton*, 257 Mich App at 69 (referring to MCL 780.766(1)). In that case, the trial court ordered the defendant to pay restitution for the overtime expenses incurred by the sheriff's department that investigated the defendant's crime. *Id.* at 62. We considered the distinction previously drawn, in dicta, by this Court in *Crigler*, 244 Mich App at 427, and concluded that the award of restitution was improper because "the *general cost* of investigating and prosecuting criminal activity is not direct 'financial harm as a result of a crime.' " *Newton*, 257 Mich App at 69-70 (emphasis added). Rather, "the cost of the investigation [in *Newton*] would have been incurred without regard to whether [the] defendant was found to have engaged in criminal activity." *Id.* at 69. Similarly, in *People v Gaines*, 306 Mich App 289, 323-324; 856 NW2d 222 (2014), we concluded that the trial court erred by ordering "restitution for officer investigation (24 hours for $864), a forensic analyst (102 hours for $3,672), and discs ($6.64)" because those costs were "comparable to costs of the investigation in *Newton* and distinguishable from the direct cost of the buy money paid in *Crigler*."

Here, defendant was ordered to pay $520.28 in restitution to the Calhoun County Sheriff's Department, based solely on the overtime compensation paid to four employees; $3,000 in restitution to the Fredonia Township Fire Department, apparently based on the use of two fire engines and the presence of personnel from the department that responded to the scene, but adjusted based on the trial court's estimation; and $781 to the City of Marshall Fire Department, based on the amount of compensation paid to two lieutenants of the Marshall Fire Department and the use of one fire engine, but reduced according to the trial court's estimation.

To the extent that the trial court awarded restitution based on routine overtime compensation or regular compensation, such an award was improper. A law enforcement agency is not entitled to restitution for regular or overtime compensation paid to its employees for

performing their ordinary job functions. See *Newton*, 257 Mich App at 69-70; *Gaines*, 306 Mich App at 323. However, based on the exhibits and testimony admitted at the restitution hearing, we agree with the trial court that the responding authorities may be entitled to some restitution given the extraordinary amount of time invested by the fire and sheriff personnel solely due to defendant's calculated refusal to exit the pipe. We find it appropriate to draw such a distinction in this case because, for much of the day, no further investigation or emergency response would have been necessary but for defendant's deliberate decision to remain inside the pipe. The record shows that the emergency personnel arrived at the scene, determined that defendant was inside the pipe illegally, believed that defendant's safety was at risk given the strong odor inside the pipe, and instructed him to come out, but defendant refused, stating that he was going to stay inside the pipe until 5:00 p.m. It is clear that defendant's measured, illegal act prompted the expenditure of resources far beyond routine costs for investigation, prosecution, or emergency response that would ordinarily be expended to investigate or evacuate an individual in a pipe.

Likewise, the record provides support for a finding that at least some of the expenses incurred by responding governmental entities specifically resulted from defendant's conscious decision to remain inside the pipe for several hours, so that these expenses qualify as *"direct . . . financial harm as a result of a crime."* *Gaines*, 306 Mich App at 322, quoting MCL 780.766(1). It would be illogical to conclude that the time and resources invested by the emergency responders for the duration of the incident were wholly "ordinary" or "routine." The incident was assessed and the investigation was completed early in the day, it was readily apparent that defendant's conduct was illegal, see MCL 750.81d(1); MCL 750.552(1), and it was defendant's choice to persist in his conduct at a substantial cost to responding authorities. The governmental entities were required to remain on site for eight to ten hours simply because defendant refused to exit the hazardous pipe, and the agencies did not want to unnecessarily endanger the safety of emergency personnel by performing an avoidable "confined space rescue." Accordingly, we conclude that this extended investment of resources was distinct from "the general cost of investigation and prosecuting criminal activity" or " 'costs of investigation' unrelated to a particular defendant's criminal transaction," which would not be recoverable as restitution. See *Gaines*, 306 Mich App at 322; *Newton*, 257 Mich App at 69; *Crigler*, 244 Mich App at 427. Rather, the costs incurred in this case appear more analogous to a loss of buy money, or a financial loss that "results directly from the crime itself." *Crigler*, 244 Mich App at 427; see also *Gaines*, 306 Mich App at 323; *Newton*, 257 Mich App at 69-70.

However, even if the governmental entities may be entitled to some restitution in this case, the record does not reveal the point at which their losses shifted from ordinary costs of investigation to financial losses directly resulting from this particular defendant's criminal activity. Further, even if this distinction were clear, the prosecution did not establish a reasonably certain factual foundation for these expenses in the trial court. *Corbin*, 312 Mich App at 365. The proffered exhibits and testimony do not provide any basis for understanding how the rates used for the calculations were developed or whether the stated "costs" actually constitute financial harm—meaning "injury," "damage," or "hurt," see *Crigler*, 244 Mich App at 426—to the entities for purposes of MCL 780.766(1). The evidence also does not distinguish between routine costs and additional expenses that were caused by defendant's extraordinary conduct in this case. Further, the trial court adjusted the restitution calculations without any basis in the record, instead altering the restitution amounts based on what it believed to be "the best common sense solution . . . based on [its] experience . . . ." Consequently, similar to

-5-

*Corbin*, 312 Mich App at 368, the trial court in this case essentially selected an arbitrary amount of restitution by attempting to make an "informed guess" about the appropriate amount of restitution. This approach is not consistent with the statutory standard, which requires a "reasonably certain factual foundation for a restitution amount." *Id*. at 365.

In sum, the prosecution failed to demonstrate, with reasonable certainty, the resources expended by the governmental entities in connection with defendant's criminal activity beyond the ordinary costs of investigation or operation. See *Newton*, 257 Mich App at 69-70; *Corbin*, 312 Mich App at 360, 365. Accordingly, the trial court abused its discretion by ordering defendant to pay restitution based on the requests and information proffered by the prosecution. See *Corbin*, 312 Mich App at 361.

On remand, however, the prosecution may seek leave in the trial court to conduct a second restitution hearing. See *id*. at 371, 373. If the prosecution chooses to pursue restitution on behalf of these governmental entities, it must establish, with reasonable certainty, the amount of any loss that (1) did not constitute an ordinary, general cost of investigation or operation and (2) was directly caused by defendant's criminal offense. See *Corbin*, 312 Mich App at 365; *Newton*, 257 Mich App at 69-70; *Crigler*, 244 Mich App at 427.

Again, the governmental entitles may not recover salary or overtime compensation that is equivalent to that paid as a " 'cost of investigation' unrelated to a particular defendant's criminal transaction." *Newton*, 257 Mich App at 69; *Crigler*, 244 Mich App at 427. The exhibits proffered in connection with the restitution hearing were insufficient to establish this distinction, as they merely identified a "rate" for each category of personnel and calculated a restitution value by multiplying that rate by 10, the number of hours spent on the scene. Also, again, routine purchase or maintenance costs associated with the fire engines and other equipment are not eligible for restitution. *Newton*, 257 Mich App at 69-70; *Crigler*, 244 Mich App at 427. Accordingly, if the prosecution seeks restitution on remand based on direct physical or financial *loss*, *harm*, or *damage* related to the equipment utilized by the departments, see *Newton*, 257 Mich App at 68; *Crigler*, 244 Mich App at 426, the prosecution must establish that loss with a "reasonably certain factual foundation," *Corbin*, 312 Mich App at 365. The exhibits also were insufficient in that regard, as it is apparent that the amounts provided do not identify property or financial assets that were lost, damaged, or harmed, if any, because the amounts provided are calculations based on designated standard "rates" multiplied by the number of hours on site. See *Crigler*, 244 Mich App at 426-427. Information concerning the value of the loss, damage, or harm is crucial for restitution to be justified in this case given the clear "qualitative" distinction drawn by the *Crigler* Court between the loss of buy money, *i.e.*, a loss directly resulting from the crime itself, and commonplace monetary expenses like the purchase and maintenance of vehicles or other equipment, *i.e.*, ordinary costs that are "unrelated to a particular defendant's criminal transaction." *Id*. at 427.

## IV. CONCLUSION

The restitution award in this case constituted an abuse of discretion. Accordingly, we

-6-

vacate the restitution order and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ Michael J. Riordan