# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AARON EARL MERRITT,

Defendant-Appellant.

UNPUBLISHED
June 21, 2018

No. 336280
Montcalm Circuit Court
LC No. 2016-021554-FH

Before: MURRAY, C.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

Defendant was convicted of operating a motor vehicle while intoxicated, third offense (OWI-III), MCL 257.625(1) and (9); operating a motor vehicle while license suspended or revoked, second or subsequent offense (DWLS-II), MCL 257.904; operating a motor vehicle without security, MCL 500.3102; unlawful use of a license plate, MCL 257.256; and operating without a motorcycle indorsement, MCL 257.312a. Defendant appeals as of right, and we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

This criminal prosecution arose from defendant's May 22, 2016 motorcycle accident. As a result of the accident, defendant suffered five broken vertebrae, four broken ribs, a broken sternum, a broken finger, and severe head trauma. The parties stipulated that, at the time of the accident, defendant's operator's license was revoked, defendant had notice of the revocation, and defendant had no motorcycle indorsement. Defendant also admitted that he drove the motorcycle without insurance and that he took a license plate from his mother's garage, belonging to a different motorcycle, and placed it on his motorcycle. Defendant's blood-alcohol level, taken several hours after the accident, was 0.209%. The prosecutor contended that defendant operated the motorcycle while intoxicated. Defendant maintained that he only consumed alcohol after the accident.

On appeal, this Court granted defendant's motion for remand and directed the trial court to conduct an evidentiary hearing and to rule on defendant's motion for a new trial based on the ineffective assistance of counsel. *People v Merritt*, unpublished order of the Court of Appeals, entered September 1, 2017 (Docket No. 336280). After the remand, the trial court conducted an

evidentiary hearing and denied defendant's motion for a new trial. This case now returns to this Court for further review.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel because his trial counsel failed to timely file a motion for appointment of an expert witness. Defendant further argues that the trial court abused its discretion in denying his motion for a new trial because the trial court erroneously ruled that the desired expert witness testimony would not have resulted in a different outcome at defendant's trial. We disagree.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This determination requires a court to first find the facts and then determine whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "A trial court's decision to deny a motion for a new trial is reviewed for an abuse of discretion." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003) (quotation marks and citations omitted).

To establish a claim of ineffective assistance of counsel, a defendant must prove that defense counsel's performance was objectively unreasonable in light of prevailing professional norms and that, but for counsel's error, it is reasonably probable that the outcome would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). It is presumed that counsel's assistance was effective, *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), as to which a defendant bears a heavy burden of proving otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). It is further presumed that the challenged conduct might be considered sound trial strategy, *People v Knapp*, 244 Mich App 361, 385-386; 624 NW2d 227 (2001), which a defendant can only overcome by showing that counsel failed to perform an essential duty and that the failure was prejudicial to defendant, *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). Counsel's performance must be measured against an objective standard of reasonableness, *People v Payne*, 285 Mich App 181, 188, 190; 774 NW2d 714 (2009), and without benefit of hindsight, *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). This Court "neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *People v Mutuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

> An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy. A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy. In general, the failure to call a witness can constitute ineffective assistance of

counsel only when it deprives the defendant of a substantial defense. [*Payne*, 285 Mich App at 190.]

"A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Here, the initial motion for appointment of an expert witness was filed because defendant brought his pre-accident medical condition to the attention of defense counsel several days before trial began. Defense counsel immediately brought a motion for appointment of an expert witness, Dr. Benedict Kuslikis, upon receiving this information from defendant, arguing that the potential expert witness testimony could link defendant's blood-alcohol level to those pre-accident medical conditions. The trial court denied the motion for appointment of an expert witness. On remand from this Court, in making its findings regarding effective assistance of counsel, the trial court specifically found that defense counsel had been diligent in filing the motion for appointment of an expert witness because counsel filed the motion as soon as defendant provided the medical information to him. The trial court noted that defendant had not provided the information to defense counsel until the eleventh hour, which led to it denying the motion for appointment of an expert witness as untimely.

Although defendant now faults his trial counsel for having failed to file the motion for appointment of an expert witness at an earlier date, he fails to address the trial court's finding that the delay in filing the motion was due to his own failure to disclose his medical issues with his defense counsel at an earlier point. Defendant also fails to address the trial court's findings that defendant was not incarcerated during the majority of the time that these criminal charges were pending and that defendant could have shared his medical information with his defense counsel at an earlier point in the case. We cannot conclude that the trial court clearly erred in finding that defense counsel was diligent in filing the motion for appointment of an expert witness and that it was defendant's fault that the motion was not brought sooner. Consequently, defense counsel's performance did not fall below an objective level of reasonableness, and defendant's claim that he was denied the effective assistance of counsel fails.

Additionally, defendant failed to show that, assuming counsel's performance was deficient, he suffered any prejudice as a result. The trial evidence showed that defendant suffered a broken neck, broken back, and severe head trauma when he crashed, and was found unconscious and unable to move at 2:40 a.m., when witnesses arrived at the scene of the accident. In the face of that evidence, defendant testified at trial that, after the accident and his horrendous injuries, he walked around the accident scene for 40 to 60 minutes, picked up and carried a case of beer a set distance, and consumed some of it together with a large quantity of whiskey. The proposed expert testimony of Dr. Kuslikis would not have addressed what defendant's blood-alcohol level was at the time of the accident. Rather, the proposed testimony would have been that *if* defendant's version of the incident were true—that he drank 12 shots of Fireball whiskey and three beers after the motorcycle accident, despite his grievous injuries—then defendant's blood-alcohol level at the time of the blood draw should have been 0.26%. Thus, with his actual draw level being 0.209%, Dr. Kuslikis would have opined that the level was "consistent" with defendant's theory and trial testimony, i.e., that he had not been drunk at the time of the accident. However, the trial court reasonably concluded that this testimony would not have made a difference in the outcome of the trial; the trial court found that the expert

testimony simply purported to corroborate a version of facts that the jury never believed to begin with, and the trial court also found that defendant's version of events, in the face of the evidence, would have been a "stretch of fantasy." We find no error in the trial court's analysis that defendant suffered no prejudice from his attorney's allegedly deficient performance. See *Strickland*, 466 US at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). And because the basis for defendant's argument that the trial court erred in denying him a new trial was ineffective assistance of counsel, the new trial claim necessarily fails as well.

### III. UNLAWFUL USE OF A LICENSE PLATE CONVICTION

Defendant next argues that his conviction for unlawful use of a license plate is void and must be vacated because the jury did not deliver a verdict on this charge due to a typographical error on the verdict form and which also led the jury foreperson to read an incorrect verdict. We disagree that defendant's conviction on this charge is void because, viewing the record as a whole, it is "clearly deducible" that the jury intended to convict defendant on Count IV, unlawful use of a license plate, notwithstanding the typographical error and the statement by the foreperson.

Generally, for "an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (quotation marks and citation omitted). At trial, defendant did not object to the typographical error contained on the verdict form or to the jury foreperson's error in reading the verdict. Therefore, this issue is not properly preserved for appeal, and we review the issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 765-766; 597 NW2d 130 (1999).

An uncertain jury verdict may provide grounds for relief. *People v Ullah*, 216 Mich App 669, 683; 550 NW2d 568 (1996), citing *People v Smith*, 383 Mich 576; 177 NW2d 164 (1970). However, "a jury verdict is not void for uncertainty if the jury's intent can be clearly deduced by reference to the pleadings, the court's charge, and the entire record." *People v Rand*, 397 Mich 638, 643; 247 NW2d 508 (1976). When a defendant claims that a jury verdict is void for uncertainty, this Court reviews the pleadings, the trial court's charge, and the entire record, under a standard of "clear deducibility." *Id.*; see also *People v Miller*, 143 Mich App 274, 276; 372 NW2d 329 (1985).

In *Rand*, 397 Mich at 640, the jury found the defendant guilty of "assault to do great bodily harm less than the crime of murder." Phrased in this manner, the intent element of the crime was omitted. *Id.* at 641. On appeal, this Court reversed the defendant's conviction on the grounds that the jury's verdict failed to state the element of intent necessary to commit the crime and that the defendant could therefore not be convicted of more than a simple assault. *Id.* at 642. The Michigan Supreme Court reversed and reinstated the defendant's conviction based on a conclusion that the jury's verdict could be "clearly deduced by reference to the record." *Id.* at 645. The Supreme Court noted that the jury in that case "was carefully instructed on the offenses charged in each count of the information" and that the "trial judge carefully instructed on the element of intent." *Id.* at 644. Through those instructions, the trial court "made it very clear, however, that the offense as he phrased it contained an intent element." *Id.* at 645. Under those

circumstances, the Supreme Court upheld the jury verdict because it could be clearly deduced by reference to the record. As the Supreme Court stated, to "do otherwise would, quite literally, exalt the form over the substance." *Id*.

In this case, it can also be deduced by reference to the record that the jury intended to find defendant guilty of Count IV, unlawful use of a license plate. First, defendant admitted that the license plate on his motorcycle on the night of the accident belonged to a completely different motorcycle than the one he was riding. Second, the prosecutor mentioned Count IV in his closing argument:

> You will have the opportunity to read the jury instructions that you have in front of you, and there are a number of counts. Let's talk about those just very briefly. You heard from Officer Gregory that this plate did not belong to the Kawasaki motorcycle. You heard from Ms. Townsend and the defendant himself who indicated that it was her plate. That he took it from her garage and put it on this bike at some point. That's an easy one.

Third, the trial court instructed the jury regarding the elements of Count IV, unlawful use of a license plate, as follows:

> Count four is License Plate and Unlawful Use. To prove this charge, the Prosecutor must prove the following beyond a reasonable doubt:
>
> First, that the defendant carried or displayed a registration plate upon a Kawasaki motorcycle.
>
> Second, that the registration plate displayed upon the Kawasaki motorcycle was not issued for that vehicle.
>
> And third, that it occurred on or about May 22nd, 2016 within Montcalm County.

Finally, the verdict form itself contained reference to the proper charge. The verdict form stated, under Count IV, that defendant was charged with unlawful use of a license plate. The only portion of the verdict form that was incorrect was the line underneath the charge, which erroneously repeated language from Count III, operation of a motor vehicle without security.

Given all of these facts, it is clearly deducible that the jury knew that it was rendering a guilty verdict on the offense of unlawful use of a license plate, even though the verdict form contained a typographical error repeating language regarding the charge of operating a motor vehicle without security. We therefore affirm defendant's conviction of unlawful use of a license plate because the jury's verdict of guilty on this charge can be clearly deduced by reference to the record. "To do otherwise would, quite literally, exalt the form over the substance." *Rand*, 397 Mich at 645.

## IV.  RESTITUTION AWARD

Finally, defendant argues that the trial court abused its discretion in ordering defendant to pay $637.07 in restitution to the Greenville Department of Public Safety.  We disagree because the trial court's order is authorized as reimbursement pursuant to MCL 769.1f(1)(a).

At sentencing, the trial court ordered defendant to pay $1,545.71 in restitution, comprised of $908.64 owed to Montcalm County Emergency Services and $637.07 owed to the Greenville Department of Public Safety.  On appeal, defendant challenges only the aspect of the order requiring defendant to pay $637.07 to the local police department and does not challenge the payment to the medical first responders.  Defendant argues that the order of restitution was not authorized under the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*.  In support of his position, defendant cites *People v Wahmhoff*, 319 Mich App 264; 900 NW2d 364 (2017), *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003), and *People v Crigler*, 244 Mich App 420; 625 NW2d 424 (2001).  Each of the cases defendant cites analyzed and applied the restitution provisions of the CVRA and concluded that restitution ordered under the CVRA may not include ordinary costs of investigations.  See *Wahmhoff*, 319 Mich App at 270-271; *Newton*, 257 Mich App at 69-70; *Crigler*, 244 Mich App at 427.  Thus, were the CVRA the only applicable statute, there might be merit to defendant's claim.  However, the prosecution aptly points out that the trial court's order was authorized by MCL 769.1f, which provided,[1] in pertinent part:

> (1) As part of the sentence for a conviction of any of the following offenses, in addition to any other penalty authorized by law, the court may order the person convicted to reimburse the state or a local unit of government for expenses incurred in relation to that incident including, but not limited to, expenses for an emergency response and expenses for prosecuting the person, as provided in this section:
>
> (a) A violation or attempted violation of section 601d, *625(1), (3), (4), (5), (6), or (7)*, section 625m, or section 626(3) or (4) of the Michigan vehicle code, 1949 PA 300, MCL 257.601d, 257.625, 257.625m, and 257.626, or of a local ordinance substantially corresponding to section 601d(1), 625(1), (3), or (6) or section 625m or 626 of the Michigan vehicle code, 1949 PA 300, MCL 257.601d, 257.625, 257.625m, and 257.626.  [Emphasis added.]

Because defendant was convicted of OUIL-III, MCL 257.625(1), the trial court had the authority to order payment pursuant to MCL 769.1f.  We note that the fact that the statute speaks of "reimburse[ment]" instead of "restitution" is of no significance.  See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "reimburse" and "restitution" as both having qualities

---

[1] We quote the version of MCL 769.1f that was in effect at the time of defendant's sentencing.  This statute was amended, effective March 21, 2018, but the language of relevant subsections remained substantively unchanged.  See 241 PA 2017.

of "restoration"). MCL 769.1f(2) further describes which expenses may be ordered to be reimbursed. In particular, expenses may be ordered for

> the salaries or wages, including overtime pay, of law enforcement personnel for time spent responding to the incident from which the conviction arose, arresting the person convicted, processing the person after the arrest, preparing reports on the incident, investigating the incident, and collecting and analyzing evidence, including, but not limited to, determining bodily alcohol content and determining the presence of and identifying controlled substances in the blood, breath, or urine. [MCL 769.1f(2)(a).]

Because defendant was convicted of an offense that was enumerated under MCL 769.1f(1)(a) and because MCL 769.1f(2)(a) authorizes reimbursement for "salaries or wages . . . for law enforcement personnel," the trial court did not err in ordering defendant to reimburse the Greenville Department of Public Safety.

Affirmed.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jonathan Tukel